# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00529-CV

---

**Shane Lilly, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-25-002926, THE HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Shane Lilly, the owner of a dog named Major Lilly (Major), appeals pro se from the trial court's final Order of Disposition (Order) determining that Major "shall be humanely destroyed in accordance with Tex. Health & Safety Code § 822.003(e)" due to the court's finding that Major caused serious bodily injury to a person. *See* Tex. Health & Safety Code § 822.003(f). For the following reasons, we affirm the trial court's Order.

## BACKGROUND

Austin/Travis County Animal Protection requested a seizure warrant for Major from the Austin Municipal Court pursuant to Texas Health and Safety Code Sections 822.002 and 822.003 after the dog allegedly attacked Julissa Alvarez on March 31, 2025, and bit her arms in several places. The warrant request was supported by the affidavit of Elayna Grove, who serves as the Animal Protection Serious Bodily Injury Lead Investigator for the City of Austin.

The municipal court issued a seizure warrant, and Major was taken into custody by the Austin Animal Center (Center). The municipal court conducted a hearing on July 14, 2025, after which it found that Major had caused serious bodily injury to Alvarez and ordered that he should be humanely euthanized. Lilly posted the required bond and appealed the municipal court's order to the county court at law (trial court). After a de novo hearing, the trial court found that Major had caused serious bodily injury to Alvarez and ordered that he be humanely euthanized. Lilly timely perfected an appeal from the Order in this Court.

The trial court admitted several exhibits into evidence, including a police report from the incident, Alvarez's medical records, Alvarez's affidavit, and Grove's seizure affidavit. The following witnesses testified: Grove; APD Officer Steven Odom; Erin Coleman, who serves as the "animal health technician lead" at the Center; Melody Courtney, the "senior animal protection officer" at the Center; and Lilly. According to Grove's and Alvarez's affidavits, Alvarez had been driving when she noticed a woman helping a loose and injured dog, who was later identified as Major. Alvarez stopped to help the woman corral Major to keep him from entering the street and learned that the woman had called animal control but that it would be two hours before help would arrive. The woman wanted to take Major to the vet herself rather than wait because Major was yelping in pain and favoring his back leg. As Alvarez helped to corral Major, he bit her right arm, then bit her left arm, and again bit her right arm and held on for a while, after which Alvarez stumbled away and into an adjacent business. EMS was called and responded to the scene, rendering first aid and pain medications to Alvarez and then transporting her to the hospital.

Lilly testified that on the date of the incident, a "hit and run" driver injured Major while he and the dog were crossing Montopolis Avenue on their way to pick up a muzzle for

2

Major that was being delivered to Lilly's former residence. Lilly wanted a muzzle for Major because the dog had been growling at people on the bus when they stepped on the dog's feet or kicked him and he wanted to "avoid any more altercations" and "the possibility of a bite." After Major was hit and injured, Lilly panicked and left injured Major alone in front of his former residence to go get his phone to call for help because he "couldn't pick him up." Lilly testified that he is currently homeless and living in a tent. He does not have a car and either walks or uses public transportation. He testified that his uncle has offered to give him a house with an enclosed yard or a car to contain Major.

Lilly testified that he previously paid $12,000 to Lonestar Malinois to train Major for a six-week period but that he picked up Major "early" and that Major did not finish his training there. Lilly did not explain why Major did not finish his training. He testified that he had a "solution" as an alternative to euthanasia for Major: a different trainer, Precision Canine, would receive the dog directly from the Center and "fix" him with proper training until he could be reintegrated into society. Lilly explained that after Precision Canine works with Major, Grove could interact with the dog and give her "blessing," if appropriate; if at that point Major was not able to be reintegrated into society, then Lilly understood that Major would have to be euthanized. But Lilly believed that Major should be given another chance to be rehabilitated through another training program.

Grove testified that she investigates dangerous-dog cases under the Texas Health and Safety Code. She estimated that she has worked on thousands of dangerous-dog cases and that "hundreds" of them have involved dogs that "have been alleged to have committed a serious bodily injury on a person." She testified that Major is of the Belgian Malinois breed, which is used in police work and is a "very powerful breed" known to "chase and take down people" and

3

to have a "powerful bite." After APD informed her about the incident, Grove spoke with Alvarez by phone and sent one of her field officers to obtain a medical release and affidavit from her. After obtaining Alvarez's medical records and reviewing the photos that Alvarez shared of her injuries, Grove learned that Alvarez was transported to the hospital and suffered lacerations requiring three staples in her right arm. She explained that staples are typically used rather than stitches for wider wounds. Grove determined that seizure of Major was justified after reviewing Alvarez's records and speaking with her because her injuries "qualify as serious bodily injury under the law."

Grove testified that Major's vet records from his impoundment at the Center show that he must be sedated each time he sees the vet for any reason, even for vaccines, due to his aggression, which is not normal for a dog. Grove explained that none of the statutory exceptions apply to the incident at issue involving Major's attack on Alvarez.[1] Grove testified that during her investigation, Lilly told her that Major had previously bitten other people five or six times. She testified that at the Center, the staff must take "extra precaution" with Major because he is very aggressive and has not calmed down in the almost five months he has been there. In her experience, Major is one of the "more aggressive dogs that we have had to impound" in serious-bodily-injury cases.

Grove expressed concern for others' safety if Major were released to Lilly given that Lilly is unhoused and that Major would likely be around the public more than he might otherwise be, including while riding public transit. Grove testified that she would "be nervous

---

[1] Section 822.003(f) provides five circumstances under which a dog that has caused serious bodily injury may not be ordered destroyed, including that the injury occurred during an arrest or other action of a peace officer while the peace officer was using the dog for law enforcement. *See* Tex. Health & Safety Code § 822.003(f).

about [Major] taking public transportation" and that "him not living in a solid dwelling would set him up for failure." Grove did not believe that the alternative of releasing Major to Lilly but imposing "dangerous dog restrictions"—such as requiring Lilly to maintain $100,000 liability insurance and keep the dog in a secure enclosure, *see* Tex. Health & Safety Code § 822.043 ("Registration")—would be feasible under the circumstances. Grove also testified that before and during the incident, Major appears to have been running loose, which is "highly concerning" given his breed and aggressive tendencies.

Although Lilly had shared with Grove that he was hoping to send Major to an obedience-training school if the dog were released to him, Grove did not know much about the program and was aware from her conversations with Lilly that Major had participated in similar training in the past. Grove could not opine on whether such additional training or rehabilitation would be successful, but she was primarily concerned about public safety and bite "escalation"— meaning that if a dog continues to bite without corrective measures being put into place, the bites "will only get worse"—given that Major had already bitten several people and the severity of Alvarez's injuries.

Coleman testified that Major is a particularly aggressive dog who remains that way despite his injuries from the incident having healed and that she and the staff at the Center must deliver medications and treats by dropping them into his kennel because if they get their fingers near the kennel Major bites the bars and acts like he is going to bite them. Coleman testified that she is afraid of Major and that in her long career of twenty-six years there have been perhaps only "ten [dogs] out of tens of thousands" that she has been afraid of. Coleman testified that she believes Major will bite others if he is out in public.

5

Courtney testified that she interacts with Major "kennel side" once or twice a week at the Center. She said that she tends to "stay away from his kennel, because he does have aggressive behaviors" and did not appear to have had any training based on her interactions with him. When Courtney and other staff provide Major treats, they "stand back a couple of feet from the kennel and toss them into the top," which is a typical protocol for "serious bodily injury seized dogs" because staff "don't come in contact with them."

**DISCUSSION**

The statute under which the trial court ordered the euthanasia of Major is Section 822.003, which provides, in relevant part: "The court may order the dog destroyed if the court finds that the dog caused serious bodily injury to a person by attacking, biting, or mauling the person." *See* Tex. Health & Safety Code § 822.003(e). "Serious bodily injury" is defined, relevantly, as "an injury characterized by severe bite wounds or severe ripping and tearing of muscle that would cause a reasonably prudent person to seek treatment from a medical professional and would require hospitalization without regard to whether the person actually sought medical treatment." *Id.* § 822.001(2).

On appeal, Lilly asserts the following issues: (1) the trial court's order is not compliant with Texas Rule of Civil Procedure 162, (2) the trial court's order is erroneous because Lilly has not been found guilty of a criminal offense under Health and Safety Code Section 822.005 and because Alvarez provoked Major's attack, (3) the trial court erred as a matter of law in ordering Major's euthanasia because Lilly is a person with a disability who uses Major to assist him in connection with that disability, (4) Lilly was deprived of due process because Alvarez did not testify and the State used "unqualified opinions" and "unverified

6

reports" to prove its case, and (5) the trial court abused its discretion in ordering euthanasia when there were other less punitive alternatives available.[2]

As to Lilly's first issue, Rule 162 is simply inapposite to the facts and procedural history here. Rule 162 applies when a plaintiff seeks to dismiss his case or take a non-suit and prevents the use of such dismissal or non-suit from prejudicing the rights of an adverse party "to be heard on a pending claim for affirmative relief." *See* Tex. R. Civ. P. 162 ("Dismissal or Non-Suit"). No party here sought a dismissal or filed a non-suit, and thus Lilly's citation to the rule and attempt to support his arguments with the rule are without merit. We overrule Lilly's first issue.

In his second issue, Lilly argues that the trial court erred in rendering the Order because (1) Alvarez provoked Major's attack and (2) Section 822.005 of the Health and Safety Code requires a finding of criminal negligence before a dog may be ordered euthanized. However, Section 822.003 contains no requirement that the serious bodily injury be the result of an *un*provoked attack, nor does it provide an exemption for an alleged provoked attack. *See* Tex. Health & Safety Code § 822.003. Additionally, Section 822.005 operates independently of Section 822.003 by providing that the owner of a dangerous dog that makes an unprovoked attack under specified circumstances commits a criminal offense. *See id.* § 822.005. Section 822.005 provides an alternative avenue for the euthanasia of a dog that has caused serious bodily

---

[2] The State asserts in its brief that this Court lacks subject-matter jurisdiction over this appeal because no statute expressly provides for an appeal from an order of disposition under Section 822.003. There is no merit to the State's assertion, and we need not address it in detail because litigants have a general right to appeal a final order rendered by a county court at law as a matter of law, *see* Tex. Civ. Prac. & Rem. Code § 51.012; Tex. Gov't Code § 22.220, and no express statutory authorization is necessary. Furthermore, this Court has previously reviewed such orders, implicitly concluding that the Court has subject-matter jurisdiction. *See Swanson v. State*, No. 03-16-00729-CV, 2017 WL 1832492, at *1 (Tex. App.—Austin May 2, 2017, no pet.) (mem. op.) (reviewing county court at law's order of disposition under Section 822.003).

7

injury to another, that is, when its owner is charged with and convicted of a criminal offense. *See id.* § 822.005(d). But there is nothing in Section 822.003—the statute at issue in this case—requiring a finding that the owner has committed a criminal offense under Section 822.005 for a court to render a euthanasia order. *See id.* § 822.003. Nor has Lilly identified anything in the record showing that he was prosecuted for a criminal offense under Section 822.005. We overrule Lilly's second issue.

In his third issue, Lilly argues that the trial court erred in rendering its order because Lilly was entitled to the "defense" provided in Section 822.006(d) because Lilly has a disability and Major is trained to provide him assistance with that disability.[3] *See id.* § 822.006(d). However, that statute expressly provides that the defense applies "to prosecution under Section 822.005(a)." *Id.* As already discussed, the record does not reflect that Lilly was prosecuted under Section 822.005. The defense does not apply, therefore, to the facts in this case, and we overrule Lilly's third issue.

In his fourth issue, Lilly argues that he was denied due process because he was "not given the right to cross-examine the key witness [] who was allegedly injured, and the prosecution failed to produce this witness for examination," instead relying on "third party testimony and opinions" and "unverified claims," including Major's biting history. However, Lilly cites no authority requiring the State to elicit live testimony from the victim of a dog attack to prove its case, nor have we found any. Moreover, Grove testified that it was Lilly himself who had told her about Major's bite history and, although the trial court admitted the bite-history testimony over Lilly's objection that it was "unsubstantiated," Lilly does not make any

---

[3] Lilly testified that he has seizure disorder and that Major assists him with "seizure response and compulsive behavior interruption."

8

cognizable argument that the court's ruling was erroneous. *Cf.* Tex. R. App. P. 38.1(i) (appellant must support appellate issues with clear and concise argument and appropriate citations). The evidence in the record, including Alvarez's affidavit and medical records, supports the trial court's finding that Alvarez suffered serious bodily injury resulting from Major's attack, and Lilly has not demonstrated that he was deprived of his due-process rights. We overrule his fourth issue.

In his final issue, Lilly argues that the trial court abused its discretion in ordering Major's euthanasia rather than a less punitive alternative such as rehabilitative training, as Lilly suggested in his testimony. While abuse of discretion is the appropriate standard of review for when a statute uses the word "may," *see Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 492 (Tex. 2017), as Section 822.003 does, we cannot conclude on this record that the trial court acted in an arbitrary or unreasonable manner without reference to guiding rules or principles, *see id.* Although when testifying Lilly proposed an alternative to euthanasia—sending Major to a training program for rehabilitation until he receives Grove's "blessing" to be reintegrated into society—the trial court, as the trier of fact, was free to weigh this testimony against the other evidence and make credibility determinations. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Furthermore, Lilly testified that Major had been enrolled in a training program previously, but this bite occurred nonetheless. The trial court could reasonably have concluded that subsequent training would not be any more successful than the previous training.

Moreover, if a trial court chooses *not* to order that the dog be destroyed, it must order the dog released to either its owner, the person from whom it was seized, or any other authorized person. *See* Tex. Health & Safety Code § 822.003(e). Even assuming that Precision

9

Canine would be an "authorized person" to whom Major could be released under Section 822.003(e), the statute does not expressly authorize the court to order conditions and contingencies such as those that Lilly suggested. *See id.* In any event, on this record the trial court reasonably exercised its discretion in concluding that the risk to the public would be too great to release Major to anyone, even to a dog trainer chosen by Lilly whom Lilly represented would either rehabilitate or euthanize the dog. The trial court did not act unreasonably or arbitrarily given the evidence of the serious bodily injury that Major inflicted; the testimony about Major's continuing aggressive behavior; and Lilly's recognition even before the incident that Major should be leashed and muzzled yet failing to keep him under those conditions while the dog was in public, allowing the attack to occur. We overrule Lilly's final issue.

## CONCLUSION

Having overruled Lilly's issues, we affirm the trial court's Order.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed: February 11, 2026